UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE E. REYNOLDS,

    Plaintiff,

vs.                                                  Case No. 14-11270

MEGAN J. BRENNAN, Postmaster          HON. AVERN COHN
General of the United States,

    Defendant.

_____/

**<u>DECISION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 15)
AND DISMISSING CASE</u>[1]**

I.  Introduction

This is an employment discrimination case under Title VII, 42 U.S.C. § 2000e. Plaintiff Dale E. Reynolds, proceeding <u>pro se</u>, is suing defendant Megan J. Brennan, Postmaster General of the United States (the government),[2] claiming discrimination on the basis of race (African-American), religion (unknown), and retaliation for prior protected activity.

Before the Court is the government's motion for summary judgment. (Doc. 15).

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  <u>See</u> Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Plaintiff originally sued Patrick R. Donahoe, who was then Postmaster General of the United States.  Donahoe retired during the pendency of this case and Megan J. Brennan is his successor.  Accordingly, the Court substituted Brennan as the proper defendant.  (Doc. 21).

Reynolds filed a response. (Doc. 23). The government filed a reply. (Doc. 24). The matter is now ready for decision. For the reasons that follow, the motion will be granted. The case will be dismissed.

As will be explained, Reynolds has not come forward with sufficient evidence from which a reasonable jury could find that he was subjected to discrimination on the basis of his race, religion, or that he was retaliated against for engaging in protected activity.

## II. Background

The material facts as gleaned from the parties' papers follow:[3]

Reynolds works as a mail handler at the Michigan Metroplex postal facility in Pontiac, Michigan. Richard Grant works as a mail handler at the same postal facility as Reynolds.

In 2013, Reynolds was assigned to pay location 120 on the night shift (Tour I) and Grant was assigned to pay location 201 on the day shift (Tour 2).

On February 5, 2013, at approximately 11:22 p.m., Reynolds and Grant had a verbal altercation in the men's locker room of the Metroplex facility. The incident was witnessed by Wallace Stanciel, a postal clerk. Reynolds says he had been assaulted, threatened, and stalked by Grant for some time.

During the verbal altercation, Grant accused Reynolds of going to his girlfriend's house. Reynolds denied the accusation and felt threatened by the incident. Reynolds warned Grant that he would stand his ground and protect himself if Grant ever came

---

[3]The facts are taken from the parties' joint statement of facts. (Doc. 24).

after him. Reynolds pulled his license to Carry Concealed Weapon (CCW) permit out of his wallet to show Grant.

There was no physical contact between Reynolds and Grant during the verbal altercation. However, Reynolds says that Grant "assaulted" him by pointing his finger in Reynolds' face and that Grant was yelling angrily at him. Grant apologized to Reynolds.

On February 6, 2013, at approximately 1:30 a.m., Reynolds notified Danyelle Riggins, the Lead Manager of Distribution Operations, that he was "assaulted in the men's locker room" by Grant in front of a witness. Riggins said she would speak to Grant the next day.

Reynolds called the Postal Inspection Service at approximately 2:00 a.m. and asked them to investigate the matter. Later that morning, he filed a report with the Pontiac Sheriff's Department.

On February 7, 2013, Inspector Sally Palazzolo interviewed Reynolds regarding the incident. Reynolds gave Inspector Palazzolo a copy of the statement that he had provided to management.

On February 11, 2013, Inspectors Palazzolo and Marek interviewed Grant and Stanciel. Grant and Stanciel both reported to the inspectors that during the verbal altercation Reynolds indicated he would shoot Grant.

On February 14, 2013, the Inspection Service gave the Lead Manager of Distribution Operations, Danyelle Riggins, a detailed report along with the employee statements from Reynolds, Stanciel, and Grant.

Reynolds' supervisor, Angela Williams-Dial, was absent from work on the day of the incident. However, upon her return to the office, she reviewed the report prepared

by the Postal Inspection Service, including the employees' statements. Williams-Dial also discussed the matter with her supervisor Riggins.

On March 1, 2010, Williams-Dial conducted a "Due Process Investigative Disciplinary interview" with Reynolds and his union representative, Tonya Williams. Reynolds denied that he had threaten Grant or said that he would shoot him.

Reynolds admits that he warned Grant that he was prepared to defend himself and showed Grant his CCW permit.

On March 10, 2013, Reynolds received a No Time Off (NTO) Suspension of seven days for unacceptable conduct. He served the suspension while on duty with no loss of pay. The NTO was issued by Angela Williams-Dial and approved by Danyelle Riggins.

Grant received a 14-day suspension without pay on March 11, 2013, effective March 29, 2013 through April 11, 2013, for Conduct Unbecoming a Postal Employee. . Grant's suspension was requested by his managers, Brian Knowles and James Lanius.

On March 15, 2013, Reynolds contacted an Equal Employment Opportunity office and requested an appointment with a Dispute Resolution Specialist.

On March 22, 2013, Reynolds completed a Pre-Complaint Counseling form alleging that he was discriminated against on the bases of his race (African American) and religion (unknown). He subsequently filed a timely EEO complaint with the same claims. Reynolds chose not to provide his religion during the EEO process stating that his "practices are personal."

On April 18, 2013, Reynolds claimed that Grant "eyeballed" him at work.

On April 19, 2013, Reynolds petitioned the Oakland County Circuit Court for a

Personal Protection Order, requesting that Grant stay 300 yards away from him while both working at the Postal Service. The petition was denied.

On August 22, 2013, Reynolds asked a postal supervisor "if Danyelle [Riggins] had been escorted out of the building." That date, Reynolds "talked to several employees whom had heard the same rumor."

Reynolds says that since Riggins was not in the building at the time of his inquiries, "everyone assumed that the rumor was true." Reynolds also says that Riggins subsequently accused him of starting the rumor about her.

On or about August 23, 2013, Reynolds was in a meeting with Supervisor Linda Adams and his Union Steward, Belinda Bryant, to discuss his attendance. During the meeting, Riggins knocked on the door and stuck her head into the room and asked to speak with Adams and Bryant when the meeting was over. Reynolds says that Riggins then turn her head towards him, stared at him, and asked whether he had been looking for her. Reynolds also says that Riggins "stared" at him on August 24, 2013.

On August 25, 2013, Reynolds filed a second Pre-Complaint Counseling form claiming that Higgins' retaliated against him for filing a prior EEO complaint when she accused him of starting a rumor about her, stared at him, and asked whether he was looking for her. He subsequently filed a timely EEO complaint containing the same claims.

Reynolds received the final determination from the EEO of no discrimination on December 28, 2013.

Reynolds filed this action on March 27, 2014.

5

III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may

6

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. Analysis

### A. Title VII - Race and Religious Discrimination

#### 1. Legal Framework

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex and national origin. It also prohibits retaliation against individuals for engaging in protected activity. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3. A plaintiff may establish a Title VII claim by direct or circumstantial evidence. Rowan v. Lockheed Martin Energy Sys. Inc., 360 F.3d 544 (6th Cir. 2004). In the absence of direct evidence, as in this case, federal courts apply a three-step legal analysis to Title VII cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case of race and religion discrimination by showing "(1) that he was a member of a protected class; (2) that he experienced an adverse employment

action; (3) that he was qualified for the position; and (4) that he was replaced by someone outside of the protected class or that he was treated differently than similarly situated employees." Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007). If the plaintiff establishes a prima facie case, the employer need only articulate a legitimate, nondiscriminatory reason for its action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Defendant's "burden is one of production only, not of persuasion." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-143 (2000). Once the employer states a legitimate, nondiscriminatory reason, the plaintiff must prove by a preponderance of the evidence that the employer's reasons are not its true reasons, but a pretext for intentional discrimination. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994).

2. Application

The government argues that Reynold cannot establish a prima facie case of religious discrimination because the evidence fails to show that he is a member of a protected [religious] class.[4] The Court agrees. Reynolds has not stated his religion for the record. When he was asked to identify his religion during the EEO process, Reynolds indicated that his religion was a "personal" matter. Reynolds' supervisors are unaware of his religion. Because Reynolds has not identified a religion, he cannot satisfy the first prong of his prima facie case.

Reynolds cannot establish the second prong of a prima facie case of race and

---

[4]Reynolds is African American and therefore can establish the first prong of a race discrimination claim.

religious discrimination because he did not suffer an adverse employment action as a matter of law. The Court agrees. "A materially adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Tepper, 505 F.3d at 515 citing Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998). The evidence fails to demonstrate that Reynolds incurred economic harm or injury as a result of receiving the NTO suspension. Further, there is nothing in the record showing that Reynolds experienced a "materially adverse change" in his employment as a result of receiving the NTO suspension.

To the contrary, Reynolds was able to serve his NTO suspension "while on duty without loss of pay." Therefore, he did not experience an adverse employment action and cannot satisfy the second prong of a prima facie case as a matter of law. See Strong v. Potter, 2008 WL 4791318 (E.D. Mich. Oct. 29, 2008) (letter of warning and seven-day NTO suspension given to postal mail handler were not adverse employment actions).

The government also says that Reynolds' discrimination claims fail because he has not presented any evidence of disparate treatment, i.e. that he was treated differently because of his race or religion. To prove disparate treatment, Reynolds must come forth with evidence showing that "all of the relevant aspects of his employment situation are 'nearly identical' to those individuals who allegedly were treated more favorably." Pierce v. Commonwealth Life Insurance Co., 40 F.3d 796, 802 (6th Cir. 1994). "Superficial similarities between a disciplined employee and his

colleagues are not sufficient to show a prima facie case of discrimination."

Arendale v. City of Memphis, 519 F.3d 587, 604 (6th Cir. 2009).

    Here, the Michigan Metroplex is a large postal facility with more than 100 managers and 500 employees. Reynolds worked on the night shift. His immediate supervisor was Angela Williams-Dial and his second level supervisor was Danyelle Riggins. Both managers testified that they had no knowledge whether the comparisons cited by Reynolds in his administrative EEO complaint were involved in a verbal altercation because they did not supervise the employees in question. Reynolds has not identified an employee who worked at the Michigan Metroplex facility for the same supervisors as he did [Angela Williams- Dial and Danyelle Riggins], engaged in similar conduct, and was treated more favorably than he was.

    Reynolds has alleged that he was treated differently than Lynette Phillips, (Race: African American; Religion: Unknown), Michael Nichols (Race: African American; Religion: Unknown), and Al Casale (Race: Caucasian; Religion: Unknown). However, as the government points out, none of these employees worked for his supervisors and Reynolds has not shown that these employees were similarly situated to him in all relevant respects. Because Reynolds has not presented any evidence of disparate treatment, the Court agrees that he has not established the fourth prong of a prima facie case.

    Moreover, even assuming Reynolds made out a prima facie case of discrimination to survive summary judgment, the government has met its burden of production by articulating legitimate nondiscriminatory reasons for its employment

decision. The record shows that Reynolds received an NTO suspension with pay following a detailed investigation because of his unacceptable conduct during the verbal altercation with Grant. Grant was also disciplined, being suspended without pay for his conduct even though he apologized for his actions.

Finally, Reynolds has not shown that the government's action was a pretext for race or religious discrimination. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was a victim of intentional discrimination." Reeves, 530 U.S. at 153. Reynolds has the ultimate burden of producing sufficient evidence from which a jury could reasonably reject defendant's articulated reasons and infer that defendant intentionally discriminated against him on the basis of his race and/or religion. Hunter v. Secretary of U.S. Army, 565 F.3d 986, 996 (6th Cir. 2009).

To show pretext, Reynolds must provide evidence that the government's reasons "(1) had no basis in fact, (2) did not actually motivate its conduct, or (3) were insufficient to warrant the challenged conduct." Browning v. Dep't of the Army, 436 F.3d 692, 695 (6th Cir. 2006).

Reynolds has not provided any evidence showing that the employment decisions made by Williams-Dial and Riggins were motivated by intentional racial or religious discrimination. During the EEO investigation, Reynolds alleged that he was "assaulted with racial profiling as a based factor." Reynolds also said that Riggins disregarded his safety and told him that "only God can guarantee your safety." Even if such isolated comments and stray remarks were made, they are not sufficient to show discriminatory

11

intent. Thus, he has not provided evidence of pretext in order to overcome summary judgment.

In the end, Reynolds' conclusory assertion about racial profiling is not supported by any evidence in the record. Reynolds cannot prove intentional discrimination by relying on conclusory assertions, unsupported speculations and subject beliefs. <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 585 (6th Cir. 1992). The government is entitled to summary judgment because there is no evidence that the employment decisions in this case were based on discriminatory animus. <u>Warf v. U.S. Dept. of Veterans Affairs</u>, 713 F.3d 874, 880 (6th Cir. 2013).

### B. Title VII - Retaliation

#### 1. Legal Framework

"To establish a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an action adverse to the plaintiff; and (4) there causal connection between the protected activity and the adverse action." <u>Warf</u>, 713 F.3d at 880.

#### 2. Application

The government says that Reynolds' retaliation claim fails because he cannot cannot prove the third element of his prima facie case. It is well settled that a materially adverse action does not include trivial harms such as "petty slights, minor annoyances, and simple lack of good manners." <u>Burlington N. & Santa Fe. Ry. Co. v. White</u>, 548

U.S. 53, 68 (2006).

Here, Reynolds says that in April 2013, Grant "eyeballed" him at work. He further alleges that in August 2013, Riggins accused him of starting a rumor about her, stared at him, and interrupted a meeting and asked him if he was looking for her. Although these actions may have bothered or upset Reynolds, they do not constitute actionable retaliatory conduct. In Burlington, the Supreme Court reiterated that "it is important to separate significant from trivial harms' because Title VII does not set forth 'a general civility code for the American workplace.'" Burlington, 548 U.S. at 68 quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998). The incidents Reynolds describes are insufficient as a matter of law to constitute a materially adverse action in the context of a retaliation case. Thus, the government is entitled to summary judgment because Reynolds has not made out a prima facie case of retaliation.

Even if Reynolds had established a prima facie case of retaliation, the government has articulated legitimate, non-discriminatory reasons for its actions, as explained above. Therefore, Reynolds cannot satisfy the "but for" causation standard applicable to retaliation claims. Univ. of Texas Sw. Med. Ctr. v. Nassar, __U.S.__, 133 S.Ct. 2517, 2533 (2013).

Finally, to the extent Reynolds says he was subjected to a hostile work environment, such a claim fails. To establish a hostile work environment, Reynolds must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift

Sys., Inc., 510 U.S. 17, 21 (1993).

The incidents cited by Reynolds when viewed as a whole are not "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive…" Warf, 713 F.3d at 878. The incidents are at best indicative of "ordinary workplace friction" which are not sufficient to make out a hostile work environment claim. Id.

## V. Conclusion

For the reasons stated above, Reynolds has not provided sufficient evident to meet his summary judgment burden of showing there is a genuine issue of material fact as to whether he was subjected to discrimination or retaliation. Reynolds' unsupported statements do not carry the day. Rather, the record shows an absence of any facts from which a reasonable juror could find for Reynolds. Put simply, there is no material evidence of race or religious discrimination or retaliation.

The government's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

      S/Avern Cohn  
      UNITED STATES DISTRICT JUDGE

Dated: April 28, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 28, 2015, by electronic and/or ordinary mail.

      S/Sakne Chami  
      Case Manager, (313) 234-5160